## MARTIN *v.* BANKS.

### Opinion delivered January 25, 1909.

1. FRAUDULENT CONVEYANCES—HUSBAND IMPROVING WIFE'S PROPERTY.—A wife's property is not liable to her husband's creditors for augmentation of the rents and profits or enhancement of value on account of any reasonable contribution of his time, labor or skill in the management of her property. (Page 80.)

2. SAME—TRANSACTIONS BETWEEN HUSBAND AND WIFE—BURDEN OF PROOF.—Where funds were invested by a husband in lands, the title of which was taken in the wife's name, and the transactions are attacked by his creditors as fraudulent, the burden is on her to show distinctly that the funds so invested belonged to her. (Page 81.)

3. HUSBAND AND WIFE—BINDING EFFECT OF HUSBAND'S ADMISSIONS.—A husband's admissions in regard to real estate standing in his wife's name, tending to prove that the land was in fact his, were not binding upon her unless made by him while acting as her agent. (Page 82.)

Appeal from Craighead Chancery Court; *J. D. Block,* Special Chancellor; reversed.

*Hawthorne & Hawthorne* and *T. S. Osborne,* for appellants.

1. Since on appeal chancery cases are tried *de novo,* the findings of a chancellor are persuasive merely, and, if, on review of the cause, it appears that his findings are against a clear preponderance of the evidence, this court will reverse. 75 Ark. 72; 31 Ark. 85; 43 Ark. 307; 77 Ark. 305.

2. The evidence of witness Robertson as to W. S. Martin's statements in effect that he was investing his money in his wife's name to keep his creditors from getting it was inadmissible, no evidence appearing to show that the statements were made in the presence of Mrs. Martin or with her knowledge, or or that they were made within the scope of his authority as her agent. It is mere hearsay. I Greenleaf on Ev. (16th Ed.) § 197; 6 Ark. 138; 13 Ark. 295; 21 Ark. 77; 58 Ark. 446; 44 Ark. 213; 73 Ark. 146; 76 Ark. 435; 67 Ark. 147; 123 Mo. 450; 9 Cush. (Mass.) 36.

3. In this, a chancery case, it was not necessary for appellant to prove her ownership, since the appellee's case must fail unless he disproves the denials of the answer by a preponderance of the evidence. 16 Ark. 248; 19 Ark. 51; *Id.* 166; *Id.* 529; 18 Ark. 585. Nevertheless, she has gone farther and made good her ownership by clear, positive and uncontradicted evidence. 31 Ark. 103. Our statutes guaranty to a married woman the separate ownership of property, whether acquired before or after marriage, free from any interference or control over it by her husband, if she so elects, and it is specifically exempt from liability for his debts. Kirby's Digest, § § 5207, 5213, 5214, 5217. Fraud is not presumed, and, where property is vested in the wife, the burden rests upon the husband's creditor to show that it is not hers. 38 Ark. 419; 11 Ark. 378; 26 Mo. 533; 7 Am. & Eng. Dec. Eq., 396; 72 Ala. 406; 12 Kan. 494; 38 Neb. 61; 31 Ore. 531.

4. Notwithstanding the Married Women's Act, the husband's duty to support his family remains; and he is under no duty to apply the proceeds of his labor to the payment of his creditors in preference to the support of his family. I Bishop, Married Women, 1875 Ed., 894; *Id.* 299 *et seq.,* 454-456, 461-5; 4 Barb. 456; 7 Am. & Eng. Dec. in Eq., 401-4; 15 Am. & Eng. Enc. of L. (8) 813. Neither is he bound to compel his wife to labor for his creditors. I Bishop, Mar. Wom. 418; 7 Vroom (N. J. Eq.) 687.

5. The mere fact that a husband handles the wife's property in making investments for her as her agent, does not change the wife's possession and ownership. The proof is that Martin's possession was as agent only. 7 Vroom (N. J. Eq.) 481; 83 Mo. App. 151; 21 Ind. 115; 21 Ill. App. 282; 67 Ga. 195; 10

Mich. 333; 33 Mo. 154; 7 Bush (Ky.) 394; 23 Miss. 130; 75 Me. 426; 5 Neb. 152; 72 Ala. 406; 94 Va. 711. The husband has the right to give his personal services to the management of his wife's property without other consideration than the support and maintenance of himself and family. The result of his labor on land owned by her is not subject to his debts. 123 Mo. 450; 106 Ia. 649. See, also, 154 Mo. 415; 55 S. W. 441; 7 Am. & Eng. Dec. in Eq., 387, 399.

*Lamb & Caraway,* for appellee.

1. Unless clearly against the weight of the evidence, the decree should be affirmed. 75 Ark. 52; 73 Ark. 489; 67 Ark. 200; 72 Ark. 67; 68 Ark. 134; 68 Ark. 314; 71 Ark. 605; 44 Ark. 216.

2. The evidence of witness Robertson was admissible, (a) to show fraudulent intent on the part of Martin. 16 Cyc. 998 and 1118. And to disprove the denials of the answer. 46 Ark. 122; 50 Ark. 318; 20 Cyc. 764, and cases cited; *id.* 768; 16 Cyc. 998; 14 Am. & Eng. Enc. of L., 493. (b) All that he said while in possession of the property, tending to impeach her title and to show his fraudulent intent in placing it in her name, was admissible. 62 Ark. 26; 59 Ark. 251; 20 Cyc. 783; 14 Am. & Eng. Enc. of L., 497. (c) It was competent as a part of the *res gestae.* 50 Ark. 283; 14 Am. & Eng. Enc. of L. 496. (d) It appears from this evidence that the husband and wife were acting with the mutual design to defraud; hence it was admissible on the ground that any act or statement of either of the co-conspirators in furtherance of their common design is admissible against both of them. 16 Cyc. 999; 14 Am. & Eng. Enc. of L. 496. In investigating fraudulent transactions, the examination of witnesses may take a very wide range. 20 Cyc. 764; 14 Am. & Eng. Enc. of L., 492-3. (e) It was admissible in impeachment of Martin. 31 Ark. 685; 30 Am. & Eng. Enc. of L., 1115, note 5.

3. Where property is purchased by a wife during coverture, a presumption arises that the purchase was made with money of the husband; and when a bankrupt husband conveys property to

his wife or has it done, the presumption as to existing creditors is that the conveyance was fraudulent. 75 Ark. 562; 76 Ark. 252; 74 Ark. 161; 73 Ark. 174; 66 Ark. 419; 72 Ark. 58; 71 Ark. 611; 14 Ark. 69; 43 Ark. 84; 22 Ark. 143.

HILL, C. J. This was a creditor's bill, brought by Banks against W. S. Martin and his wife to set aside a conveyance of real estate which stood in Mrs. Martin's name, and to subject the same to the payment of Banks's judgment against Mr. Martin. The chancellor gave the relief prayed, and Mrs. Martin has appealed.

The plaintiff's case rests upon the testimony of two former business associates of Mr. Martin as to statements made by him tending to prove that the property standing in his wife's name was in fact his property, the title to which was placed in her name in order to avoid his creditors reaching the same; and upon the presumptions which arise from the purchase of property in the wife's name by an insolvent husband.

On the other hand is the positive testimony of Mr. and Mrs. Martin. This controlling fact in the case is undisputed: Mrs. Martin at the time of her marriage had an interest-bearing note of $1,600 derived from her father's estate. Mr. Martin failed in business, but went to work upon a salary, and his earnings were from $100 to $150 per month during the six years in which the property in controversy was accumulated. His testimony and that of Mrs. Martin is that he devoted his earnings to the support of his family, and that he invested Mrs. Martin's money for her. The various investments made for her were detailed in the evidence, and from them it is claimed by Mr. and Mrs. Martin that the property in controversy was acquired. It is true that Mrs. Martin knows but little of the details of these transactions and investments, she having left these matters to the care, control and management of her husband. But all of the investments were made in her name, and the property always kept in her name, and no mingling of her property with his own is shown. Martin did pay some debts from his own earnings, and the debt sued upon here was incurred long prior to the accumulation of his wife's property.

Unquestionably, the accumulation of this property, with her $1,600 to start with, is largely the result of his business sagacity, management and care of her property. In *Sharp* v. *Fitzhugh,* 75 Ark. 562, this court said: "We are not prepared to say that there are no limitations upon the right of the husband to expend his time, labor, skill and experience in managing or improving the separate property of his wife, and deny his creditors the fruits of the same in the enhancement of the value of the land and the increased rents and profits by reason of such contribution; but we have no hesitancy in announcing the rule that the wife's property is not liable to the creditors of the husband for augmentation of the rents and profits or enhancement of value on account of any reasonable contribution of his time, labor or skill in the management of the property."

This principle controls here. There was no obligation upon Mr. Martin to devote his wife's property to the payment of his creditors, nor to use his skill, judgment and business sagacity in the management of his wife's property in order that his creditors might reap the benefit thereof. There is no law forbidding him to devote his own earnings to the support of his family, instead of using his wife's property for that purpose. That was a matter for him and his wife to determine; and they were each within their legal rights when he devoted a reasonable amount of his skill, sagacity, time and labor to the augmentation of her capital, and earned a living for his family from his own exertions as a traveling salesman, and devoted his own earnings to the support of his family.

Another statement from *Sharp* v. *Fitzhugh* is applicable here: "Under the circumstances, the burden is upon Mrs. Sharp to show distinctly that the funds she used in these purchases and investments were not furnished by her husband, and that they did not accrue from his earnings." The court is of opinion that Mrs. Martin has met this requirement, and has established this fact by a preponderance of the testimony, and it would serve no useful purpose to review the facts.

There were but four witnesses in the case, the two above

mentioned business associates of Mr. Martin, who testified to statements made by him as above indicated, and Mr. and Mrs. Martin. The admissions of Mr. Martin can not be binding against Mrs. Martin. None of the statements were made in the line of his agency; and if it be admitted that they were co-conspirators to defraud his creditors, none of the statements were made in the line of the conspiracy, but they were mere casual statements, disconnected from any of the management of her affairs; and whatever effect they may have upon his rights, they were foreign to hers. But, even if they be admitted, yet the court is of opinion that the detailed statements of Mr. and Mrs. Martin of their affairs sufficiently showed that the accumulations were the result of the $1,600 inherited by her, as managed by her husband. The utmost effect that the statements would have would be to weaken the force which otherwise could be attached to his testimony. As there is no other contradiction of his testimony, and none of hers, the court does not think that they are of sufficient importance to overcome their positive testimony.

The decree is reversed and the cause remanded with directions to dismiss the bill as to Mrs. Martin.